UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

Ogden Carter                                                                Civil Action No. 09-446

versus                                                                       Judge Tucker L. Melançon

Island Operating Co., Inc., et al                              Magistrate Judge C. Michael Hill

MEMORANDUM RULING

Before the Court is defendant Compliance Technology Group, LLC's ("CTG") Motion to Dismiss Pursuant To Rule 12(b)(6) which the Magistrate Judge converted to a Motion for Summary Judgment [Rec. Doc. 29], an opposition to the motion filed by plaintiff, Ogden Carter [Rec. Doc.35], an opposition to the motion filed by Island Operating Company, Inc. ("Island") [Rec. Doc. 36] and CTG's replies thereto [Rec. Doc. 42; 44]. For the following reasons, the motion will be granted.

*I.  Background*

This action involves a personal injury suit brought by plaintiff, Ogden Carter, an employee of Platform Crane Services, Inc. ("PCS"). PCS contracted with Century Exploration New Orleans, Inc. ("Century") to provide crane maintenance and repair services on Century's crane located on the SS 154 J platform, one of its platforms located in the Ship Shoal area of the Gulf of Mexico ("the Platform"). Plaintiff claims he was injured on November 3, 2007, when he allegedly stumbled over a bent well hatch cover on the offshore platform while he and his co-worker were performing crane services[1].

Plaintiff filed a Petition for Damages in the 19th Judicial District Court for the Parish of East Baton Rouge, Louisiana, naming defendant Island as the owner and/or operator of

---

[1] Plaintiff and his co-worker were the only personnel working on the SS 154 J platform, an unmanned platform that is part of a loop operation serviced by platform operators who are housed at another Century platform, the SS 150 C.

the Platform. The action was removed to the Middle District of Louisiana on October 29, 2008. *R. 1.* Thereafter, the case was transferred from the Middle District to this Court on March 19, 2009. *R. 6.* On December 4, 2009, plaintiff filed an Amended Complaint naming Century as "the owner and/or operator" of the platform at issue, and CTG as the "owner and/or operator and/or company responsible for inspection of the platform."[2] *R.18, ¶ I,3.* Plaintiff contends that all defendants are liable for the damaged hatch cover on the deck of the Platform which allegedly caused his injury. He further contends that defendants had a duty to discover the condition on inspection, report the condition and correct the condition. *Id*. CTG filed this Motion to Dismiss Pursuant To Rule 12(b)(6) on April 14, 2010. On April 19, the motion was converted to a motion for summary judgment by the magistrate judge and transferred to this Court for consideration.

## II. Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id*. If the

---

[2] Century contracted with CTG to provide services associated with the its platforms, including the Platform at issue. *R. 38.*

**2**

moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[3] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the

---

[3] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

**3**

non-moving party. *Id.*

### III. Analysis

CTG asserts that the Court should dismiss plaintiff's claims against it because, contrary to plaintiff's allegations that it was responsible for inspection of the Platform, CTG is a software development company that provides "SMART" software, a web-based compliance application to meet compliance requirements of the oil and gas industry. *R. 29.*

Plaintiff and Island oppose the motion, contending that CTG should not be dismissed because an employee of CTG was present on the Platform in 2007 before plaintiff's accident, thereby creating a issue of material fact as to CTG's liability. In support, they point to Island's November 12, 2009 responses to plaintiff's discovery interrogatories indicating that an employee of CTG, Eddie Landreneau, was transported to the Platform on February 6, 2007 and transported from the Platform on February 15, 2007. *R. 35; 36.* Island also cites the May 7, 2010 declaration of its shore based supervisor, Richard Brierre. *R. 36, Exh. A.* Brierre states that Island's records contain the resume of Landreneau dated April 8, 2009.[4] *Id., Exh. C.* Brierre further states that Landreneau's resume describes his work with CTG Compliance Department as including "Perform Pre-MMS Inspections and audits for client platforms" and, "Verify platform installation as per As-built drawings and Safe Charts." *Id.* Plaintiff and Island suggest that the Court deny the motion so that discovery can proceed as to Landreneau's inspection while conducting CTG's business on the Platform in 2007, before the alleged accident in question. *R. 35; 36.* Island also invites the Court "to consider its own review at this time as to whether the present schedule for development and trial of this case is realistic" and states that it will be "pleased to present" a motion to consider such a

---

[4] In his April 8, 2009 email to Island, Landreneau states that he was released from CTG because the company "is closing their Compliance Department." *R. 36, Exh. C.*

scheduling change should the Court desire.[5]  *R. 36.*

CTG argues that its own website[6], *R. 29, Exh. 2*, as well as the April 7, 2010 affidavit of its Vice President, Charles L. Runnels, Jr., *Id. at Exh. 1*, demonstrate that CTG is merely a software development company that provides a web-based compliance application and is not in the business of ensuring or guaranteeing the safety of its customer's platforms, properties or facilities. Runnels states that SMART CMS, CTG's web-based compliance application, is a comprehensive management tool which allows operators "to schedule and record all safety devise [sic] testing as required by API 14C" and "to manage all other compliance record keeping and reporting items including USCG rules for Fixed or Floating Facilities, EPA, DOT, ISO 14001, and any other Federal, State or Corporate policies." *Id.* Runnels represents that CTG "only provides technical expertise in developing software solutions" and that "the services provided by the company are entirely web-based and do not require physical presence and/or inspection of its clients' platforms, properties and/or facilities to determine compliance with state and federal regulations and to test safety." *Id.* As to Landreneau's presence on the Platform, Runnels states that CTG conducts audits for its customers merely to verify that a customer is regularly performing safety testing activity on the platform, as required by the industry regulations. *Id.* That is, "to confirm that Safe Charts, and testing paperwork all match what is actually documented on the platforms." *Id.* Finally, Runnels affirms that none of CTG employees or agents ever had any duty or responsibility to ensure safety of the Platform at issue. *Id*.

---

[5] The record indicates that CTG was served with plaintiff's Amended Complaint on December 4, 2009, over 5 months before Island's opposition was filed on May 7, 2010. *R. 18, 36.* The record further indicates that there has been no motion for extension of the May 17, 2010 discovery deadline filed by any party to this action. *R. 13, August 17, 2009 Sch. Order.*

[6] www.compliancetechnologygroup.com

The Court's review of the description of CTG's products and services on its website, *R. 29, Exh. 2, Copy of CTG's April 8, 2010 web pages*, as well as its review of the February 16, 2007 CTG Trip Detail Report documenting Landreneau's presence at the Platform ("the Report"), *R. 44, Exh. C*, belies movants contentions and affirms Runnels' Affidavit. While Island's account of the Report infers that Landreneau was on the Platform from February 6 through February 15, the Report actually provides that Landreneau was present on a number of Century platforms in addition to the Platform, SS 154 J during that period.[7] The Report also indicates that from February 5 through February 8, Landreneau inspected a number of the platforms, flew home on February 9 and returned to work February 12 through February 15. *R. 40, Exh. C*. Specifically, Landreneau's entries related to his work on the Platform provide: (1) "2/6 ... Flew to SS-154 J, worked on SS 154 J report" ... "uploaded & labeled SS-154 J pictures"; (2) "2/7 ... Edited SS-154 J Fire & Safety Equipment Drawing, Safe Chart and Safety Flow Diagram"; (3) "2/8 ... Sent SS-154 J corrected Safe Chart & Diagrams to Fairwinds Int. For corrections"; (4) "2/12 ... flew out ... and completed SS-154 J audit"; (6) "2/13 ... Received SS-154 J updates, sent to SMART. Operator completed SS-154 J 1/28/07 inspection." *Id*. Moreover, Brierre's mere reference to Landreneau's resume indicating "Pre-MMS Inspections" and "platform installation as per As-built drawings and Safe Charts" provide no support for Island's opposition and fail to refute CTG's representations that "Landreneau was verifying that what was shown on the diagrams and platform plans was actually the existing equipment and/or installation on the platform." *R. 40, p. 7*.

Contrary to Island and plaintiff's unfounded speculation that Landreneau could have

---

[7] The Report indicates that Landreneau inspected and/or made reference to the following Century platforms: SS-150 B; SS-150 C; SS 153 A; SS 153 #3; SS-154 J; and, SS- 154 E.

detected the subject bent well hatch cover, the Trip Detail Report does not indicate that Landreneau tested any equipment or reviewed the safety conditions on the Platform in any manner. Rather, it confirms that Landreneau's inspection was only to ensure record compliance in conformance with CTG's business of providing web-based compliance applications to the oil and gas industry.

### *IV. Conclusion*

As the undisputed material facts demonstrate that CTG's inspection of the Platform was solely related to record compliance, CTG had no duty to ensure day-to-day safety of the Platform and therefore, no duty to plaintiff related to the alleged accident. Accordingly, CTG's Motion for Summary Judgment will be granted.